UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-427-CRS-CHL

**KURT K. MOHNSAM,**                                                                                                     **Plaintiff,**

v.

**JASON M. NEMES, et al.,**                                                                              **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel and for Sanctions of Defendant, Acuity, A Mutual Insurance Company ("Acuity"). (DNs 74, 75.) Acuity moves to compel answers to certain interrogatories and requests for production of documents propounded to *pro se* Defendant, Morgan Bryan Perry ("Perry"), as well as for its costs and attorney's fees in making the instant Motion. Perry was ordered to file his response to the Motion on or before February 14, 2019, but did not do so. (DN 77.) As his time to respond has expired, the matter is ripe for decision.

For the reasons set forth below, Acuity's Motion to Compel and for Sanctions (DNs 74, 75) is **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

The instant action arises out of Perry's alleged failure to compensate his former attorney, Plaintiff, Kurt K. Mohnsam ("Mohnsam"), following the settlement of *Perry v. Martin & Bayley, Inc.*, No. 13-CI-00439, filed in Shelby Circuit Court, and *Perry v. Martin & Bayley, Inc.*, No. 3:13-cv-00055, filed in the United States District Court for the Eastern District of Kentucky (the "underlying actions"). (DN 74, at PageID # 582; DN 1, at ¶¶ 26, 28.) On August 17, 2017, Acuity filed an Answer to Mohnsam's Complaint and a Crossclaim against Perry and Defendants Jason Nemes and Fultz Maddox Dickens, PLC alleging breach of the settlement agreement and mutual

release entered into in settlement of the underlying actions. (DN 18.) While Perry originally appeared to attempt to assert a crossclaim against Acuity, the same was struck per the Court's November 30, 2017 Order. (DN 37.)

On or about June 15, 2018, Acuity propounded interrogatories and requests for production of documents to Perry. (DN 74, at PageID # 582; DN 74-1.) These discovery requests included requests for "information concerning [Perry's] net receipt of the $1,800,000.00 settlement[;] itemized list of the current location for the proceeds[;] an accounting of each expenditure, purchase or investment made with the proceeds[;] bank account information of where the proceeds were deposited[;] detailed investment information from the proceeds[;] and detailed expenditure/purchase information." (DN 74, at PageID # 582.) Acuity also requested documentation to track these topics, including tax returns, bank statements, etc. (*Id.*)

In his answers to Acuity's interrogatories, Perry refused to answer several questions regarding his finances on grounds that "th[e] information [wa]s unnecessary without a judgment or court order." (DN 74-2, at PageID # 617.) In his responses to Acutiy's requests for production of documents, he largely responded that all documents had been destroyed due a break-in and vandalism at the location where the documents were stored. (*Id.* at 618-19.) When the Parties took Perry's deposition on September 27, 2018, Perry likewise refused to answer some questions regarding his finances and disposition of the settlement funds he received but did answer others. (DN 93, at PageID # 1200-1214.)

Acuity alerted the Court of a dispute regarding Perry's discovery responses during an October 24, 2018 telephonic status conference, and the Court offered some preliminary guidance on the issues. (DN 67.) The Court then ordered Perry and Acuity to again confer and attempt to resolve their dispute but also granted Acuity leave to file a Motion to Compel if the dispute could

not be resolved. (*Id.*) Acuity stated in its Motion to Compel that it heard nothing from Perry after the October status conference and attempted to call Perry on November 26, 2018 to request "an update on the status of his answers to their written discovery." (DN 74, at PageID # 584-85.) On the same date, Acuity sent Perry a letter in which it stated:

> This is in follow-up to the Court's Order issued on October 26, 2018 *directing that you provide answers to certain portions of our written discovery*. It has now been four weeks since the Court Order was issued. Please advise immediately as to when you intended to provide the answers per the Court Order.

(DN 74-5 (emphasis added).) Notably, the Court's October 26, 2018 Order directed Perry to provide answers to written discovery propounded by *Plaintiff*, not Acuity. (DN 67.)

During a November 29, 2018 telephonic status conference, Acuity indicated that there remained a dispute between it and Perry regarding his discovery responses. (DN 68.) Since not all Parties were present on the call, the Court set a separate telephonic status conference to discuss the dispute. (*Id.*) Prior to the call, Perry filed additional discovery responses that contained supplemental answers to interrogatories propounded by Plaintiff but as to Acuity, only stated, "Please see the attachments. To the best of my knowledge, at this time, this is all the records that I have for the legal expenses pertaining to this case." (DN 70, at PageID # 533.) Acuity thereafter tried to contact Perry "requesting compliance with the Court's October 26, 2018 Order . . . " on December 3, 2018. (DN 74, at PageID # 585.) On December 4, 2018, Acuity sent a letter to Perry that again construed the Court's October 26, 2018 letter as directing Perry to "provide answers to certain portions of [Acuity's] written discovery." (DN 74-7.) The letter instructed Perry to "advise [Acuity] immediately as to when [Perry] intend[ed] to provide the answers per the Court order." (*Id.*)

During a December 11, 2019 telephonic status conference, Acuity told the Court that it had tried to confer with Perry but that Perry had not provided the requested materials. (DN 72, at

3

PageID # 576.) The Court then set a deadline for any party, including Acuity, to file a Motion to Compel, regarding Perry's discovery responses. (*Id.* at 576-77.) Subsequent to the call, Acuity again attempted to follow up with Perry by phone and in writing.[1] (DN 74, at PageID # 585-86; DN 74-10.) Acuity asked Perry about the status of his discovery responses and advised that it would file a motion to compel if new answers were not received. (DN 74-10.) On January 14, 2019, Perry called Acuity's counsel regarding the discovery and sent new discovery responses to Acuity.[2] (DN 74, at PageID # 586, 592-93; DN 74-11.) As Acuity was still unsatisfied with the contents thereof, it filed the instant Motion to Compel and for Sanctions. (DNs 74, 75.)

## II. DISCUSSION

### A. Legal Standard

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the bounds of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D.Ky. Aug. 19, 2013) (citing *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.1981), *cert. denied*, 454 U.S. 893 (1981)). The scope of

---

[1] Acuity's initial e-mail to Perry stated, "As the Court had ordered, we are still awaiting responses to each of our discovery requests." (DN 74-10, at PageID # 683.)
[2] Acuity's counsel represented that, on the call, Perry indicated that he had not provided information in Response to Interrogatory Nos. 21-25 because of an issue with the wording. (DN 74, at PageID # 586, 592-93.) Specifically, Perry said he interpreted Interrogatory Nos. 21-25 as all being only about any funds received from Mohnsam because of a cross-reference to Interrogatory No. 20. (*Id.*)

discovery is not without limits, however. In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Further, on motion or on its own, the Court may limit discovery that is unreasonably cumulative or duplicative; may be obtained from a less burdensome or expensive source; is outside the scope of discovery; or that a party has already had an opportunity to obtain in the action. *Id.* at 26(b)(1)(2)(C).

Fed. R. Civ. P. 33 governs interrogatories and Rule 34 governs requests for production of documents. Fed. R. Civ. P. 33-34. Rule 33(b)(3) requires the responding party to answer each interrogatory separately and under oath to the extent the responding party does not object to the interrogatory. Fed. R. Civ. P. 33(b)(3). Similarly, Rule 34(b)(2)(B) requires a response to a document request to "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons," and Rule 34(b)(2)(C) requires any objection to "state whether any responsive materials are being withheld . . . ." Fed. R. Civ. P. 34(b)(2)(B)-(C). Rules 33 and 34 are structured such that, in combination with Rule 26(g)(1), both the requesting party and the court may be assured that all responsive, non-privileged materials are being produced, except to the extent a valid objection has been made. *Heller v. City of Dall.*, 303 F.R.D. 466, 487 (N.D. Tex. 2014) (quoting *Evans v. United Fire & Cas. Ins. Co.*, No. 06-6783, 2007 WL 2323363, at *2 (E.D. La. Aug. 9, 2007)). A party who believes these rules have been violated "may move for an order compelling disclosure or discovery" provided that the party certifies to the Court that it "has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.

R. Civ. P. 37(a)(1); *see id.* at (a)(3)(B)(iii)-(iv) (providing that a party may move to compel answers to interrogatories propounded under Rule 33 or responses to requests for production propounded under Rule 34).

**B.     Analysis**

    **1.     Motion to Compel**

In its Motion, Acuity requested that the Court compel Perry to provide "direct and complete verified answers" to Acuity's First Set of Interrogatories, Nos. 5, 9, 17(c), 18(c), and 20-25.[3] (DN 74, at PageID # 580, 590.) Acuity also requested that the Court compel Perry to provide answers to its Request for Production of Documents Nos. 1-29, and its Second Set of Interrogatories to Perry, Nos. 27-32. (*Id.*) The Court will address each of these requests in turn.

        **a)     Interrogatory No. 5**

> **INTERROGATORY NO. 5**: Identify each and every document and/or tangible exhibit which you will introduce into evidence or use for demonstrative purposes at the trial in this matter.

(DN 74-1, at PageID # 596.) Perry initially responded by incorporating his answer from Interrogatory No. 3, which stated, "The people listed from the original trial, records are listed with the Shelby County Court House, Shelby County, Kentucky." (DN 74-2, at PageID # 616.) Perry supplemented his response to state, "To the best of my knowledge, I have already produced all of my evidence." (DN 74-11, at PageID # 687.) In its Motion to Compel, Acuity argued that Perry did not make a good faith attempt to search "his financial records" and provide what was requested to Acuity. (DN 74, at PageID # 586.) However, Interrogatory No. 5 did not specifically ask for financial information, it merely asked for all documents or tangible exhibits Perry intended to

---

[3] Though Acuity's proposed order and Motion sometimes refer to Interrogatory No. 19(c) instead of Interrogatory No. 18(c), the Court assumes Acuity meant 18(c) because Interrogatory No. 19 has no subparts. (DN 74-1, at PageID # 599-600.)

introduce at trial. Nonetheless, upon review, the Court finds that both Perry's answer and supplemental answer are insufficient as they do not include any specific document that Perry intends to introduce at trial. Therefore, Acuity's Motion will be granted as to Interrogatory No. 5. Perry is instructed that he must identify the exhibits he wishes to introduce at trial at this time and may supplement his response at a later date, if warranted, and in accordance with any additional pretrial orders issued by the Court.

### b) Interrogatory No. 9

> **INTERROGATORY NO. 9**: Identify the following for any payment or compensation you paid Attorney Mohnsam in consideration of legal work he performed on your behalf:
> 1. The date of payment.
> 2. The amount of the payment.
> 3. Whether the payment was made by cash, check, or credit card.

(DN 74-1, at PageID # 597.) Perry initially responded by stating that "Mohnsam was paid with a check in the amount of $25,000 for his work on the Federal Case." (DN 74-2, at PageID # 617.) Perry supplemented his response to state that he did not recall the date of the payment, that all payments were made in either personal or cashier's check, and that he recalled sending a cashier's check for $25,000 and at least two personal checks of $2,000. (DN 74-11, at PageID # 688.) Acuity argued that Perry's failure to provide a date was insufficient because the dates would have been recorded by his financial institution, and Perry "could have made a good faith attempt to contact them." (DN 74, at PageID # 586.)

Interrogatories must be answered fully, and an evasive or incomplete answer is the equivalent of a failure to answer. Fed. R. Civ. P. 33(b)(3), 37(a)(4). Further, while "[l]ack of knowledge or the ability to recollect is, if true, a fair answer," *Weaver v. Mateer & Herbet, P.A.*, 277 F.R.D. 655, 658 (M.D. Fla. 2011), "[a] party answering interrogatories has an affirmative duty to furnish any and all information *available to* that party." *Roden v. Floyd*, No. 2:16-cv-11208,

7

2019 WL 1098918, at *3 (E.D. Mich. March 8, 2019) (quoting 7 James W.M. Moore et al., Moore's Federal Practice ¶ 33.102[1]. [3] (3d ed. 2017)).  *See also Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (quoting *Haney v. Saldana*, No. 1:04-cv-05935, 2010 WL 3341939, at *3 (E.D. Cal. Aug. 24, 2010)) ("In general, a responding party is not required 'to conduct extensive research in order to answer an interrogatory, but a reasonable effort must be made.'").  While Perry's response stated that he did not recall the dates of any payments to Mohnsam, his response did not address whether he attempted to obtain this information from any source available to him.  Accordingly, Acuity's Motion to Compel will be granted as to Interrogatory No. 9 in so far as the Court will require Perry to make a reasonable effort to obtain the date of any payment referenced in Perry's previous answers to Interrogatory No. 9.  Perry shall provide a supplemental response to Interrogatory No. 9 either stating the dates of any such payment or stating that he attempted to obtain this information and was unable to do so.

### c) Interrogatory Nos. 17(3) and 18(6)

> **INTERROGATORY NO. 17**: Identify the following for each bank account you, individually or joint [*sic*], have owned from 2012 to the present time:
> . . .
> 3. The account numbers of each account.
>
> **INTERROGATORY NO. 18**: Identify the following for each bank account in the name of any business or legal entity in which you have had an ownership interest from 2012 to the present time:
> . . .
> 6. The account numbers of each account.

(DN 74-1, at PageID # 599.)[4]  Perry initially responded to both Interrogatory No. 17(3) and 18(6) by incorporating his answer to Interrogatory No. 14, which stated that the information was "unnecessary without a judgment or court order." (DN 74-2, at PageID # 617.)  Perry

---

[4] Though Acuity's Motion referred to Interrogatory Nos. 17(c) and 18(c), Interrogatory Nos. 17 and 18 as provided to the Court included subparts 1-3 and 4-6 respectively, not a-c. (DN 74-1, at PageID # 599.)  However, based on Acuity's Motion, it is clear Acuity's challenge is to Perry's Answer to the final subpart of each Interrogatory.

supplemented his answer to Interrogatory No. 17(3) to state that "[t]here have been so many accounts, both individual and joint accounts with my wife, to the best of my knowledge I do not recall the account numbers." (DN 74-11, at PageID # 689-90.) As to Interrogatory No. 18(6), his supplemental answer stated, "I do not recall the account numbers." (*Id.* at 690.) Acuity argued that Perry did not attempt to contact his financial institution or review his financial records to determine this information as required. (DN 74, at PageID # 586.) While a party is required to obtain and answer interrogatories on the basis of information reasonably available to him or her, the Court has concerns about the breadth of information requested in Interrogatory Nos. 17 and 18.

A party may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and relevance is construed broadly. Fed. R. Civ. P. 26(1); *Oppenheimer*, 437 U.S. at 351. The allegations in this matter center on whether Perry or some other party with an obligation to do so, failed to compensate Plaintiff Mohnsam for his work on the underlying actions. (DN 1.) Acuity's crossclaim against Perry is for breach of a settlement agreement, misrepresentation, and indemnity. (DN 18.) Acuity's only argument as to why Perry's account numbers are relevant is that Acuity needs to "track Mr. Perry's funds from the settlement as, as [Mohnsam] is specifically claiming a stake in a portion of those funds," and therefore, Acuity needed to "receive information concerning Mr. Perry's accounts where the funds were deposited, along with detailed information concerning where the funds are located or how the funds were utilized or transferred." (DN 74, at PageID # 584.) But Interrogatory Nos. 17-18 are not limited to accounts into which Perry deposited any settlement proceeds received or from which Perry might have conveyed any monies to Mohnsam. While the Court recognizes why Acuity might want to know how Perry disposed of any settlement funds for

purposes of collecting on a future judgment or for purposes of settlement of this case, Acuity has not demonstrated that specific details regarding Perry's use of the settlement funds are relevant to the claims presently before the Court. The Court concludes that Acuity is only entitled to the account number of any account into which Perry deposited the settlement funds at issue or from which Perry paid Mohnsam with the settlement funds at issue. Accordingly, Acuity's Motion to Compel is granted in part as to Interrogatory Nos. 17(3) and 18(6) insofar as the Court will require Perry to obtain the account number of any account into which he deposited the settlement funds at issue or from which he paid Mohnsam with the settlement funds at issue. Perry shall provide a supplemental response to Interrogatory Nos. 17(3) and 18(6) either stating the number for any such account or detailing the attempts he made to obtain this information if he was unable to ascertain the account number.

### d) Interrogatory Nos. 20-25

**INTERROGATORY NO. 20:** Identify the net amount of money you received from Attorney Mohnsam from the $1,800,000 settlement funds that was paid by Acuity in the *Perry v. Martin & Bayley* case.

**INTERROGATORY NO. 21**: Provide an itemized list of the current location(s) for any portion of the net settlement proceeds you received as referenced in Interrogatory No. 20.

**INTERROGATORY NO. 22**: Provide an accounting of each expenditure, purchase, or investment made with any portion of the net settlement proceeds referenced in Interrogatory No. 20.

**INTERROGATORY NO. 23**: Identify the following for each bank account in which you deposited any portion of the net settlement proceeds referenced in Interrogatory No. 20:
    1.    The name, address, and telephone number of the bank.
    2.    The type of accounts the money was deposited into.
    3.    The account number of each account the money was deposited into.

**INTERROGATORY NO. 24**: Identify the following for each investment you made with any of the net settlement proceeds referenced in Interrogatory No. 20:

1. The name, address, and telephone number of the person or company with whom the investment was made.
2. A description of the investment.
3. The account or identification number of the investment
4. The amount of the investment.

**INTERROGATORY NO. 25:** Identify the following for each expenditure or purchase you made with any of the net settlement proceeds referenced in Interrogatory No. 20:
5. The name, address, and telephone number of the person or company with whom the investment was made.
6. A description of the investment.
7. The account or identification number of the investment.
8. The amount of the investment.

(DN 74-1, at PageID # 600-01.) Perry initially responded to the above interrogatories by stating that "[n]o money was received from Mohnsam"; by incorporating his answer to Interrogatory No. 14, which stated that the information was "unnecessary without a judgment or court order"; and by stating that "records were destroyed due to a break-in and vandalized storage area that sustained water damage as well." (DN 74-2, at PageID # 617.) In his supplemental answers, Perry repeated as to each Interrogatory and Subpart thereof that he "received $0.00 from Mohnsam." (DN 74-11, at PageID # 690-92.) In its Motion, Acuity represented that shortly before serving the supplemental responses, Perry called to speak with Acuity's counsel and stated that he provided no information regarding his finances in response to Interrogatory Nos. 21-25 because Interrogatory No. 20 included a reference to settlement funds received from "Attorney Mohnsam" as opposed to "Attorney Nemes" or "Fultz Maddox Dickens,'" from whom he had actually received the funds. (DN 74, at PageID # 586, 593.) Acuity's Motion sought to compel responses to discovery from Perry, stating that he refused to answer the question in "good faith" because despite the specific wording of the interrogatories, Perry was aware of the information sought by Acuity due to their numerous conversations regarding the nature of the requests. (*Id.* at 587, 589.)

The Court notes that Interrogatory Nos. 21, 22, 24, and 25, at least in part, seek information outside the scope of discovery. As the Court discussed above, the claims in this case relate to whether Plaintiff Mohnsam was due and if so, was paid, a portion of the settlement proceeds. (DNs 1, 18.) Acuity also has a counterclaim pending against Perry for breach of contract and misrepresentation. (DN 18.) Therefore, only information about where Perry initially deposited the settlement proceeds and any proceeds he used to pay Mohnsam is relevant and within the scope of discovery in this matter. Any purchases, investments, or expenditures Perry made thereafter with the settlement proceeds are not relevant to the current claims and defenses before the Court. Therefore, the Court will not compel Perry to provide any information outside the scope of discovery.

However, even to the extent some of the interrogatories themselves sought information outside the scope of discovery, the Court further finds that Perry provided sufficient responses to the stated questions by indicating in his supplemental responses that he received no money from Mohnsam. Interrogatory No. 20 specifically asked about funds "received from Attorney Mohnsam" and Interrogatory Nos. 21-25 specified to answer as to "the net settlement proceeds received in Interrogatory No. 20," which included the limitation "received from Attorney Mohnsam." (DN 74-1, at PageID # 600-01.) Therefore, Perry fully answered Interrogatory Nos. 21-25 by stating that he "received $0.00 from Mohnsam." (DN 74-11, at PageID # 690-92.) While, as Acuity contends, it may have been clear to Perry from conversations with Acuity's counsel what information Acuity was seeking, the Court cannot compel Perry to provide information that was not requested in a formal discovery request. Rule 37(a)(3)(B)(iii) permits a party to file a motion to compel where "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). The Court finds that Perry gave full and complete

answers to the interrogatories propounded and, therefore, will deny Acuity's Motion as to Interrogatory Nos. 20-25.

### e) Interrogatory Nos. 27-32

Acuity also requested that the Court order Perry to provide answers to Acuity's Second Set of Interrogatories and attached the same to its Motion. (DN 74, at PageID # 590; DN 74-12.) Acuity stated in its Motion that it "[wa]s propounding" the Second Set of Interrogatories, and the Certificate of Service on those interrogatories indicated that they were served on January 15, 2019, the same day Acuity filed its Motion to Compel. (DN 74, at PageID # 589; DN 74-12, at PageID # 699.) As the Second Set of Interrogatories was served the same day Acuity filed its Motion to Compel, the time for Perry to respond to the Second Set of Interrogatories had not yet expired. *See* Fed. R. Civ. P. 33(b)(2) (providing that a responding party has thirty days after being served with interrogatories to serve its answers to the same). Therefore, Perry could not have failed to answer within the meaning of Rule 37 at the time the instant Motion was filed, nor could Acuity and Perry have yet met and conferred prior to filing the instant Motion as required by Rule 37. Accordingly, the Court concludes that Acuity's Motion to Compel is premature and improper under Rule 37. Further, "[u]nless otherwise stipulated or ordered by the court," a party is only permitted by the terms of Rule 33 to serve twenty-five interrogatories. Fed. R. Civ. P. 33(a)(1). Acuity's Second Set of Interrogatories contained Interrogatory Nos. 27-32, putting it over its limit under the Rules. Acuity neither sought leave of Court to propound additional interrogatories in its Motion, nor represented that there was any stipulation from the parties to make service of additional interrogatories proper. For these reasons, Acuity's Motion to Compel will be denied as to Interrogatory Nos. 27-32.

####    f)      Requests for Production

Acuity also requested that Court compel Perry to provide responses to its Request for Production of Documents No. 1-29. (DN 74, at PageID # 587, 589-90.) Acuity propounded twenty-nine requests for production of documents to Perry. (DN 74-1, at PageID # 605-15.) Perry initially responded with enumerated responses for each individual Request for Production. As to the vast majority of requests, Perry responded that "there [we]re no documents to produce due to a break-in & vandalism at the storage location which also caused damage destroying documents," stating or incorporating the same as his response to sixteen requests for production. (DN 74-2, at PageID # 618-19.) Shortly before the December 2018 conference call with the Court, Perry filed additional discovery responses and attached documents but did not specifically enumerate to which of Acuity's requests the documents were responsive. (DN 70.) Then, in January 2019, along with his supplemental answers to Acuity's interrogatories, Perry also served a single, supplemental response to Acuity's Request for Production in which he stated, "To the best of my knowledge, any documents, videos, photos – any and all documentation pertaining to the case Perry vs. Martin & Bayley is in the possession of Fultz Maddox Dickenson [*sic*] Law Firm." (DN 74-11, at PageID # 685.)

In its Motion, Acuity emphasized that in response to Acuity's attempts to discuss its concerns regarding his initial discovery responses, Perry served "one blanket non-responsive answer to Acuity's twenty-nine (29) Requests for Production of Documents, and produced no additional documents." (DN 74, at PageID # 581.) Acuity noted that Perry did not provide supplemental individualized responses but did not address what other deficiencies it saw in Perry's initial, individualized responses. (*Id.* at 587.) Fed. R. Civ. P. 34(b)(2)(E)(i) requires documents produced in response to a request for production to be "organize[d] and label[ed] . . . to correspond

to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Accordingly, the Court will require Perry to supplement his responses to the request for production to specify which of the documents he produced are responsive to which request for production. As with answers to interrogatories, Perry is instructed to set forth the request for production, followed by his response to the same.

Because Acuity did not make any specific arguments as to the sufficiency of Perry's initial, individual responses other than to note that his answers were "evasive," the Court will not do a request by request analysis of Perry's responses. However, because Acuity stated Perry's previous responses were "vague," in supplementing his responses to Acuity's requests for production, Perry is instructed to carefully read each request and to produce any documents within his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "A party controls a document that it has the right, authority, or ability to obtain upon demand." *Congress v. Tillman*, No. 09-cv-10419, 2009 WL 3627996, at *3 (E.D. Mich. Oct. 30, 2009) (quoting *Scott v. AREX, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989)). Therefore, it will not be considered a sufficient response for Perry to state that a document is in the possession of some other person if Perry has access to the document and could, therefore, obtain and produce it to Acuity. In his supplemental responses, if Perry tried to obtain documents but was ultimately unable to do so, he should state the same in his response.

However, in examining Acuity's requests for production, the Court also notes that some of Acuity's requests ask for documents that are outside the scope of discovery given the claims at issue in this case:

> **REQUEST FOR PRODUCTION NO. 25**: Produce a complete copy of all bank statements from each bank or financial institution in which you possess the [*sic*] bank account between the years 2015 to the present time.
>
> **REQUEST FOR PRODUCTION NO. 26**: Produce a complete copy of all bank account statements for any business or legal entity in which you have possessed an ownership interest between the years to 2015 to the present time.

15

**REQUEST FOR PRODUCTION NO. 28**: Produce a complete copy of all documents referencing or memorializing Defendant Perry's purchase or expenditures of any settlement funds (from the settlement with Martin & Bayley) for any investments.

**REQUEST FOR PRODUCTION NO. 29**: Produce a complete copy of all documents referencing or memorializing any expenditures or purchases by Defendant Perry that were made after receipt of the settlement proceeds from Defendant Perry's settlement with Martin & Bayley.

(DN 74-1, at PageID # 613-14.) Again, as noted above, what Perry did with the money after he received it is not relevant except in so far as to discover the amount of any settlement he received and whether and in what amounts he remitted payment to Mohnsam. Therefore, as to Request for Production Nos. 25 and 26, Acuity's Motion will be granted only in so far as the Court will direct Perry to produce bank account statements for any bank account into which he deposited the settlement funds at issue or from which he paid Mohnsam with the settlement funds at issue. As to Request for Production Nos. 28 and 29, Acuity's Motion will be granted only in so far as the Court will direct Perry to produce any documents related to payments made to Mohnsam.

### 2. Motion for Sanctions

Acuity requested that Perry be required to pay the reasonable costs and attorney's fees for having to prepare the instant Motion and send a second set of interrogatories to Perry. (DN 74, at PageID # 581, 590.) Under Fed. R. Civ. P. 3795)(A), if a court grants a motion to compel,

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). An opportunity to be heard need not be at a hearing. Fed. R. Civ. P. 37(a)(5) advisory committee's note to 1993 amendment (citing to former subdivision (a)(4)). Further, in determining whether "other circumstances that make an award of expenses unjust" exist, the Court can consider "whether the prevailing party also acted unjustifiably." Fed. R. Civ. P. 37(a)(4) advisory committee's note to 1970 amendment. If a motion to compel is granted in part and denied in part, then it is within the court's discretion to apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). While the Court granted Acuity's Motion to Compel in part as to certain interrogatories and requests for production, the Court finds that other circumstances here make an award of expenses unjust.

The Court is particularly troubled by Acuity's correspondence to Perry after the October 24, 2018 telephonic status conference, which misrepresented the Court's order from that date. (DNs 74-5, 74-7.) In both its November 26, 2018, and December 4, 2018, Letters to Perry, Acuity's counsel stated that the Court had directed Perry to provide answers to portions of Acuity's written discovery. (*Id.*) This is incorrect. While the Court provided preliminary guidance regarding the dispute between Acuity and Perry on the call, what the Court explicitly ordered was for Acuity and Perry to consult and attempt to resolve any issues. (DN 67, at PageID # 525.) Though the Court has no reason to believe Acuity intentionally misrepresented the Court's Order, the Court finds that especially given Perry's status as a *pro se* Defendant, Acuity's letters could have misled Perry regarding his obligations. Because of this issue and because the Court found some of Acuity's interrogatories and requests requested information outside the scope of discovery, the Court holds that other circumstances make an award of expenses unjust and will deny Acuity's request for sanctions under Fed. R. Civ. P. 37(a).

**III.     ORDER**

For the reasons stated above, IT IS HEREBY ORDERED as follows:

(1)     Acuity's Motion to Compel (DNs 74, 75) is **GRANTED** as to Interrogatory Nos. 5 and 9 and Request for Production Nos. 1-24, and 27; **GRANTED IN PART** and **DENIED IN PART** as to Interrogatory Nos. 17(3) and 18(6) and Request for Production Nos. 25, 26, 28, and 29; and **DENIED** as to Interrogatory Nos. 20-25, and 27-32.

(2)     On or before **August 5, 2019**, Perry shall serve supplementary answers and responses in accordance with this Memorandum Opinion and Order as follows:

>   (a)    Perry shall provide a supplementary answer to Interrogatory No. 5 that identifies the exhibits he intends, at this time, to introduce at trial.
>
>   (b)    Perry shall make a reasonable effort to obtain the date of any payment referenced in Perry's previous answers to Interrogatory No. 9 and shall provide a supplementary answer to Interrogatory No. 9 that either states the dates of the payments or details the efforts that he made to obtain the same if he was unable to do so.
>
>   (c)    Perry shall make a reasonable effort to obtain the account number of any account into which he deposited the settlement funds at issue or from which he paid Mohnsam with the settlement funds at issue and provide a supplementary answer to Interrogatory Nos. 17(3) and 18(6) that either states the number for any such account or details the efforts that he made to obtain the same if he was unable to do so.
>
>   (d)    Perry shall provide supplemental responses to Acuity's requests for production of documents that specify which of the documents he previously

produced are responsive to which Request for Production. Perry shall ensure he has produced all documents within his possession, custody, or control and is directed to carefully review the Court's opinion above regarding the meaning of those terms. If Perry attempted to obtain responsive documents but was ultimately unable to do so, he is ordered to state the same in his supplemental responses.

(e) As to Acuity's Request for Production Nos. 25 and 26, Perry is only required to produce bank account statements for any bank account into which he deposited the settlement funds at issue or from which he paid Mohnsam with the settlement funds at issue.

(f) As to Acuity's Request for Production Nos. 28 and 29, Perry is only required to produce any documents related to payments made to Mohnsam.

July 22, 2019

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record
*Pro se* Defendant Morgan Bryan Perry

Appeal of this Order is subject to the terms and time limitations of Fed. R. Civ. P. 72(a) and L.R. 72.2.